UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT LAWRENCE FEE,

                                    Plaintiff,

                                                                          DECISION AND ORDER

                                                                             11-CV-6625L

                          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                      Defendant.
_____

**INTRODUCTION**

       Plaintiff Robert Fee ("plaintiff") brings this action under 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that he is not disabled under the Social Security Act, and therefore, is not entitled to a period of Social Security disability and disability insurance benefits.

       Plaintiff originally applied for Social Security disability benefits on May 5, 2010, alleging that he had been disabled since March 30, 2012, due to a constellation of health issues including diabetes, hypertension, high cholesterol, sleep apnea, chronic obstructive pulmonary disease ("COPD"), back spasms, and morbid obesity. (Tr. 213). Plaintiff's application was initially denied. Plaintiff then requested a hearing before an administrative law judge ("ALJ").

       A video hearing was held before ALJ Lawrence Levey on July 26, 2011 (Tr. 18). The ALJ determined that plaintiff was not disabled under the Act (Tr. 18-24), and that decision became the final decision of the Commissioner on November 10, 2011 when the Appeals Council denied plaintiff's request for review. (Tr. 1-3). This appeal followed.

The plaintiff has moved (Dkt. #6) and the Commissioner has cross moved (Dkt. #9) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).  As discussed below, the Commissioner's decision is reversed, and the matter is remanded for the calculation and payment of benefits.

**FACTUAL BACKGROUND**

Familiarity with the pertinent facts, summarized below, is presumed.

Plaintiff was born May 8, 1953 and was 58 years old at the time of his hearing.  (Tr. 253). He has a college education and a steady history of past employment, including jobs as a rewriter/translator of educational materials for teaching English as a second language, group home house parent, manufacturing shipper and receiver, thrift store manager, used car lot manager and teacher.  (Tr. 80-81, 187).

Plaintiff's medical diagnoses, for which ample treatment records were provided to the ALJ, consist primarily of chronic back pain, diabetes, morbid obesity, and other health issues commonly associated with those conditions.

**DISCUSSION**

**I. Standard for Determining Disability**

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful activity.' If he is, benefits are denied.  If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe'– i.e., one that significantly limits his physical or mental ability to do basic work activities.  If the impairment is not severe, benefits are denied.  If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the 'Listing of Impairments'. . .

>contained in subpart P, appendix 1, of the regulations. . . . If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied. If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted). It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis. At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

## II.     The ALJ's Decision

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 30, 2010 (Tr. 20). The ALJ concluded that plaintiff had severe impairments, consisting of degenerative disc disease with radiculopathy (nerve compression), orthostatic hypotension (a sudden drop in blood pressure upon standing), COPD, sleep apnea, and obesity. *Id*. Although plaintiff's medical records indicate that he was morbidly obese at 5'10" tall and 315 pounds in weight at the time of his initial application (Tr. 213), he testified at the hearing on July 26, 2011 that he had lost over one hundred pounds in the previous year, after making dietary changes, and had reduced his weight from 348 pounds at the time of a hospitalization in 2010 to approximately 236 pounds. (Tr. 53).

At step four, after summarizing the plaintiff's medical records and the opinions of his treating, examining and reviewing physicians, the ALJ concluded that plaintiff retained the RFC to perform sedentary work, except that he required a sit-stand option, could only occasionally use his right foot to push, pull or operate foot controls, could only occasionally climb ramps or stairs, could not climb ladders, ropes or scaffolds, could only occasionally balance or stoop, could not kneel,

crouch or crawl, and could not engage in work which would expose him to unprotected heights or hazardous machinery. (Tr. 21).

Based upon testimony from vocational expert Dennis Conroy ("VE"), the ALJ concluded that plaintiff's RFC permitted him to return to his past relevant work as an ESL writer (a position found by the VE to be comparable to the job of process-description writer, as defined by the Dictionary of Occupational Titles). (Tr. 88). As such, the ALJ concluded that plaintiff was not disabled. (Tr. 24).

### III. Standards of Review

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot not substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504.

**IV.    Plaintiff's Alleged Disability and the Treating Physician Rule**

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221 F.3d at 134; *see* 20 C.F.R. § 404.1527(d)(2). In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d). Further, and most significantly here, the ALJ must articulate her reasons for assigning the weight that she does accord to both treating and nontreating physicians' opinions. *See* 20 C.F.R. §404.1527(d)(2) ("[w]e will always give good reasons in our . . . decision for the weight we give your treating source's opinion"); §404.1527(f)(2)(ii) (where treating source is not given controlling weight, "the [ALJ[ must explain in the decision the weight given to the opinions of [consulting or nonexamining physicians], as the [ALJ] must do for any opinions from treating sources . . ."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *quoting Schaal*, 134 F.3d at 505. *See also Sanders v. Commissioner*, 2012 U.S. App. LEXIS 26326 at *7-*8 (2d Cir. 2012).

Plaintiff contends that the ALJ failed to explain the weight afforded to one of plaintiff's treating physicians, Dr. Andrei Marconescu, and that Dr. Marconescu's opinion concerning plaintiff's RFC should have been granted controlling weight.

Initially, I find that the ALJ properly rejected Dr. Marconescu's opinion, and adequately explained his reasons for doing so.  As the ALJ explained, Dr. Marconescu's assessment of plaintiff's physical limitations was given to "little weight in light of its inconsistency with contemporaneously prepared treatment records, and its nature as a form report unaccompanied by the supporting documentation requested . . ." (Tr. 23).  The ALJ did note that "in an attempt to afford the claimant the benefit of any reasonable doubt, a number of the limitations posited by Dr. Marconescu [with regard to posture, movement and lifting] have been included within the assessed residual functional capacity." *Id*.

I concur with the ALJ's observation, and agree that his explanation for rejecting Dr. Marconescu's opinion is well-supported by the evidence.  Dr. Marconescu's May 26, 2011 medical source statement describes an extent of limitation not suggested anywhere else in the record.  Those portions of Dr. Marconescu's opinion which were not incorporated into the ALJ's RFC findings opine that plaintiff's diagnoses of Type II diabetes, lower back pain, obesity and Stage III (moderate) kidney disease will require 2-3 unscheduled breaks every hour for 10-15 minutes, that he will be "off task" for more than 20% of every day, and would be absent from work more than four days per month.  (Tr. 277).

The report itself does not furnish any explanation whatsoever concerning why such extensive breaks and absences might be needed, and none of plaintiff's treatment notes, from Dr. Marconescu or other care providers, seem to suggest a level of pain or impairment that would lead to such constant and utter distraction.  To the contrary, in the few treatment notes provided, Dr. Marconescu describes plaintiff's diabetes as "well-controlled" and continues the same pain medications prescribed for plaintiff's back pain (while noting that plaintiff does complain of pain on some occasions, and that he is in the care of the pain clinic).  (Tr. 292-293, 308-321).  While the medical records and plaintiff' self-reports clearly and consistently indicate that plaintiff requires the ability to shift position frequently to get comfortable, there is nothing in plaintiff's medical records suggesting that plaintiff might require multiple, extended breaks every hour due to his symptoms or

that he is unable to concentrate or focus for significant periods of time, let alone that his symptoms render him incapacitated for entire days at a time. In fact, plaintiff testified at the hearing that he had missed only 12 days of work over the final 7-8 month period (an average of less than 2 days per month) in his most recent previous employment, due to back pain or "just [waking] up feeling really bad." (T. 59). Moreover, Dr. Marconescu's report was based on visits occurring "every 1-2 months for one year," which is not indicative of an extended course of treatment. (Tr. 277).

Plaintiff also argues that the ALJ failed to apply the appropriate legal standards in assessing his credibility. The ALJ concluded that plaintiff's statements concerning the intensity and limiting effects of his symptoms were not wholly credible, given the lack of evidence in the record to support his claims, and in particular the lack of evidence that plaintiff complained of similarly intense pain and/or fatigue to his treating physicians. (Tr. 23). A claimant must produce appropriate, probative evidence in support of his statements of symptoms. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The ALJ is to consider information about a claimant's prior work record as part of the evidence relevant to credibility, as well as the consistency of the individual's statements with information in the record more generally. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).

I concur with the ALJ's conclusion that plaintiff's reports of disabling pain and fatigue so great as to preclude sedentary work are unsupported, inconsistent, and in conflict with the other evidence of record, including plaintiff's reports of activities of daily living, including grocery shopping, working on the computer, playing video games, watching television, minor meal preparation and dishwashing, and golfing occasionally. (Tr. 74, 225-226). His reports are also inconsistent with his treatment notes at the pain clinic, which describe moderate pain in the morning, but a milder level of pain (reported by plaintiff as a "2 out of 10" as the day progresses. (Tr. 382, May 4, 2011 physical therapy appointment where plaintiff reports that, "his pain is worst in the morning when he first wakes up (6-7/10) but it generally decreases to 2/10 within a few hours"; Tr. 375, April 4, 2011 physical therapy notes report that "[plaintiff] states his low back feels 'ok

today'"). Plaintiff also testified at the hearing that his recent weight loss has improved his sleep apnea, allowing him to sleep through the night. (Tr. 73). For these reasons, I find the ALJ's credibility determination is supported by the record, and was not based on inappropriate legal standards.

Nonetheless, I find that the ALJ clearly erred in concluding that the VE's testimony had established that plaintiff was capable of returning to his past relevant work. The VE testified only that the position most comparable to plaintiff's prior employment for 2 years as an ESL writer was that of process description writer, as defined by the Dictionary of Occupational Titles ("DOT"). However, the VE admitted that plaintiff's performance of the ESL writing job had been "very part-time" and at a Specific Vocational Preparation ("SVP") level of 5, while the process description writer position required performance at a SVP level of 8, for which it would "take[] four to ten years to learn the skills." (Tr. 83, 87). While the VE generally stated that he believed plaintiff could perform "most writing positions with maybe one or two exceptions, [because they] are all sedentary occupations," he did not specify any writing positions that plaintiff might be able to perform except for the process description writer position, and later admitted that even the process description writer position was not suitable: "[it] would be the only job in [plaintiff's] work history that such a person [with his RFC] could perform theoretically based on the physical requirements *but not the SVP requirement*" (Tr. 88) (emphasis added). The VE further stated that "I would say that in terms of transferability [of plaintiff's job skills] *I wouldn't be able to use [the process description writer position]*, especially at SVP:8." (Tr. 84) (emphasis added).

The ALJ interpreted the VE's testimony as establishing that plaintiff *could* return to his past relevant work, because the skills he employed as an ESL writer would be transferable to a position such as that of process description writer. However, the VE's testimony, while not a model of clarity, plainly states the opposite. *See* Tr. at 88-89 ("because of [plaintiff's] limitations those skills *would not transfer* to actual jobs in the DOT, remaining jobs in the economy") (emphasis added). I further find that even if the VE had meant to suggest that plaintiff could perform a position similar

to that of process description writer, the discrepancies between the ESL writing position described by plaintiff, wherein he worked at an SVP level of 5 for 3-4 hours a day at a missionary school in Korea and was simply "hanging out" the remainder of the workday (Tr. 86), and the full-time, technically-advanced SVP:8-level process description writer position identified by the VE, are too great to support the ALJ's finding that plaintiff could return to his past relevant work. *See generally Barrett v. Astrue*, 2012 U.S. Dist. LEXIS 35252 at *19-*20 (W.D.N.Y. 2012) (remand is appropriate where the ALJ failed to address discrepancies between the SVP required for the plaintiff's past relevant work, and the amount of time plaintiff actually previously spent in that position, learning the skills necessary to perform it). Based on the VE's testimony that the process writing position did not permit plaintiff to transfer his previously-acquired skills, and that "no [other] jobs were found of a transferable nature," the ALJ's conclusion that plaintiff could return to his past relevant work was not supported by substantial evidence. (Tr. 88).

Because plaintiff is restricted to a limited range of sedentary work, is of advanced age, has a college education, and has previously performed skilled or semiskilled work from which his skills are not now transferable, the Medical-Vocational Guidelines direct a finding of disabled, and a remand for further proceedings would serve no purpose. *See* 20 C.F.R. Part 404, Subpt. P, App. II, §201.06.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for judgment on the pleadings (Dkt. #6) is granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #9) is denied. The matter is remanded, solely for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 10, 2013.